UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| DINA M. WALLACE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 1:19-cv-1431 (AJT/TCB) |
| ) | |
| NANCY A. BERRYHILL, *Commissioner of* ) | |
| *Social Security*, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**REPORT AND RECOMMENDATION**

Pursuant to the Social Security Act § 205(g), 42 U.S.C. § 405(g), Dina M. Wallace ("Plaintiff") seeks judicial review of the final administrative decision of Nancy A. Berryhill, the Social Security Commissioner ("Defendant"), finding that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. For the reasons articulated below, pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned U.S. Magistrate Judge recommends that the Court deny Plaintiff's motion for summary judgment (Dkt. 13); grant Defendant's cross motion for summary judgment (Dkt. 16); and affirm Defendant's final decision.

I. PROCEDURAL BACKGROUND

A. **Social Security Action**

Plaintiff protectively filed her application for a period of disability and DIB on July 24, 2015, alleging disability beginning on December 1, 2014. (R. at 237.) Defendant first denied Plaintiff's claim on December 17, 2015, and then again on reconsideration on November 3, 2016. (R. at 103-49.)

Administrative Law Judge (ALJ) Richard Furcolo held a hearing on August 30, 2018. (R. at 43-88.) An impartial vocational expert, Tanya Hubacker, appeared at the hearing, and attorney Andrew Mathis represented Plaintiff. (R. at 44.) ALJ Furcolo issued a decision on October 31, 2018 denying Plaintiff's claims. (R. at 20-35.)

Plaintiff then requested review of the ALJ's decision with the Appeals Council for the Office of Disability and Adjudication and Review, who denied Plaintiff's request on September 10, 2019, making Defendant's decision final. (R. at 1-6.)

### B. The Instant Action

Plaintiff sought review of Defendant's decision by filing a complaint in this Court on November 11, 2019 (Dkt. 1). Plaintiff alleges that "the denial of her disability claim is not supported by substantial evidence . . . including the weight of the evidence, her credibility, the medical opinions of her doctors, and any and all other applicable evidentiary issues, both in law and fact, and therefore the denial of her claim should be reversed or remanded for further administrative proceedings." (Dkt. 1 ¶ 6.) Defendant filed an answer on May 8, 2020 (Dkt. 11). Defendant also filed the certified Administrative Record under seal, pursuant to Local Civil Rules 5(B) and 7(C)(1), that same day. (*See* Dkt. 12.)

After the Court entered a briefing schedule (Dkt. 10), Plaintiff filed her motion for summary judgment on June 8, 2020 (Dkt. 13); Defendant filed its cross motion for summary judgment (Dkt. 16) and its memorandum in opposition to Plaintiff's motion for summary judgment (Dkt. 19) on July 8, 2020; and Plaintiff filed her reply to Defendant's cross motion for summary judgment (Dkt 20) on July 22, 2020. Both Plaintiff and Defendant waived oral argument on their respective motions for summary judgment. (*See* Dkts. 15, 18.) Accordingly, this matter is now ripe for disposition.

## II. S<small>TANDARD OF</small> R<small>EVIEW</small>

Under the Social Security Act, the Court's review of Defendant's final decision is limited to determining whether the ALJ's decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Bird v. Comm'r of Soc. Sec.*, 699 F.3d 337, 340 (4th Cir. 2012).

Substantial evidence has long been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Put another way, substantial evidence is "more than a mere scintilla of evidence but may be less than a preponderance." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015). In reviewing for substantial evidence, the Court must examine the record as a whole, but it may not "undertake to re-weigh the conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). The Court must defer to Defendant's decision "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). The correct law to be applied includes the Social Security Act, its implementing regulations, and controlling case law. *See Coffman v. Bowen*, 829 F.2d 514, 517-18 (4th Cir. 1987).

While the aforementioned standard of review is deferential, where the ALJ's determination is not supported by substantial evidence on the record, or where the ALJ has made an error of law, the district court must reverse the decision. *See id.* at 517. With this standard in mind, the undersigned evaluates the ALJ's findings and decision.

3

## III. THE ALJ'S DECISION

The first issue before the ALJ was whether Plaintiff was disabled under sections 216(i) and 223(d) of the Social Security Act. An ALJ is required to employ a five-step sequential evaluation in every Social Security disability claim analysis to determine a claimant's eligibility. The Court examines this five-step process on appeal to determine whether the correct legal standards were applied in this case, and whether Defendant's resulting decision is supported by substantial evidence in the record. 20 C.F.R. §§ 404.1520, 416.920. In accordance with the five-step sequential analysis, the ALJ made the following findings of fact and conclusions of law.

*Step One*. At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since Plaintiff's amended alleged onset date of April 1, 2015. (R. at 22.)

*Step Two*. At the second step, the ALJ found Plaintiff's dysfunction of major joints, obesity, spine disorder, affective disorder, and asthma to be severe medically determinable impairments. (R. at 22.) The ALJ further examined Plaintiff's learning disability, but ultimately determined that "the medical record failed to establish that her alleged learning disability causes more than a minimal limitation in her ability to perform basic work-related activities." (R. at 23.)

*Step Three*. Next, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met, or medically equaled, the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. (R. at 39-40.) The ALJ considered Plaintiff's back condition and asthma in accordance with this section and found that these diagnoses did not medically equal any of the requisite listings. (R. at 23.) Next, the ALJ evaluated Plaintiff's obesity "alone, and in combination with her other severe impairments," but concluded that it did not meet or equal any listing. (*Id.*) In examining Plaintiff's mental impairments, the ALJ found

4

that Plaintiff experienced only "mild" or "moderate" limitations. (R. at 23-25.) Accordingly, the ALJ found that Plaintiff was not disabled.

Between steps three and four, the ALJ is required to consider a claimant's residual functional capacity pursuant to 20 C.F.R. § 404.1520(e), or a claimant's ability to perform physical and mental work activities on a sustained basis, despite any limitations from impairments. Here, the ALJ found that Plaintiff had the residual functional capacity to perform "light work," but "is limited to unskilled work and frequent interaction with supervisors, coworkers, and the public." (R. at 25.) Such capacity includes the ability to: sit for six hours and stand or walk for four hours in an eight-hour workday; operate foot controls with bilateral lower extremities; frequently reach overhead bilaterally; and frequently balance and occasionally climb stairs, stoop and crouch, but never climb ladders, kneel, or crawl. (R. at 25.)

*Step Four*. In analyzing the fourth step, the ALJ found that Plaintiff was unable to perform her past relevant work as a custodian, cafeteria food service worker, cafeteria attendant, retail clerk, sales assistant, or concession stand worker. (R. at 33.)

*Step Five*. Finally, after considering Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that Plaintiff could perform jobs that existed in significant numbers in the national economy. (R. at 33-35.)

Therefore, ALJ Furcolo concluded that Plaintiff was not under a disability within the meaning of the Social Security Act from April 1, 2015 (the amended alleged onset date), through the August 31, 2018 (the date of the decision). (R. at 35.)

The second issue before the ALJ was whether Plaintiff met the insured status requirements of sections 216(i) and 223 of the Social Security Act. (R. at 20.) Because Plaintiff's earnings record demonstrated that Plaintiff had acquired sufficient quarters of coverage to remain

5

insured through December 31, 2019, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through that date. (*Id.*) As such, Plaintiff would have needed to establish disability on or before December 31, 2019 to be entitled to a period of disability and insurance benefits. (*Id.*)

## IV. ANALYSIS

Plaintiff raises two points of error in her motion for summary judgment. First, that the ALJ's decision should be reversed because the ALJ failed to apply the controlling weight test when evaluating the opinions of treating physician, Dr. Rajiv K. Aggarawal. (Pl's Mem. Supp. at 8-11.) Second, that the ALJ failed to provide good reasons for according less than controlling weight to Dr. Aggarwal's treating source opinions. (Pl's Mem. Supp. at 11-16.) Defendant contends that the ALJ properly applied the controlling weight test and provided good reasons supported by the substantial evidence in the record. Upon review of the ALJ's decision and the record, the undersigned agrees with Defendant.

### A. **Correct Legal Standard**

First, in reviewing the record, the ALJ clearly applied the correct legal standard. As noted above, the ALJ addressed, as appropriate, each part of the five-step sequential evaluation analysis prior to reaching a decision. *See supra* Part III. The ALJ summarized the applicable standard in detail and then applied that standard faithfully to the facts of the case. (R. at 21-22.) Accordingly, the ALJ made no clear error of law in this regard.

### B. **Controlling Weight Test**

A treating source medical opinion as to the nature and severity of a claimant's condition is entitled to controlling weight if the opinion is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and *is not inconsistent with other substantial evidence in*

6

*the case record.* 20 C.F.R. § 404.1527(c)(2). Furthermore, if a treating source is not entitled to controlling weight, the ALJ is required to "give good reasons" for the weight given in her decision. *Id.* Still, "[a]n ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up specious inconsistencies, or has failed to give a sufficient reason for the weight afforded a particular opinion." *Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) (internal citations omitted). Ultimately, the ALJ "holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." *Id.* at 267-68 (quoting *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001)); *see also Craig v. Chater*, 76 F.3d 585, 690 (4th Cir. 1996) ("[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.").

Here, Plaintiff argues that "the ALJ erroneously excluded the controlling weight test analysis in his judgment." (Pl.'s Mem. Supp. at 9.) Further, Plaintiff argues that the ALJ erroneously determined that Dr. Aggarwal's opinions were inconsistent with the substantial evidence in the record. (R. at 9.) However, Plaintiff's argument here is without merit.

First, Plaintiff provides no support for her assertion that an ALJ is required to use the words "controlling weight test" and "treating physician" in his opinion. (Pl.'s Mem. Supp. at 9.) The Social Security Act merely states that the ALJ will give a treating provider's opinions controlling weight only *if* it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). Further, the case law Plaintiff provides to support her contention that the ALJ must mention the controlling weight test in order to apply it is inapposite here. *See Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017) (finding reversible error where the ALJ

failed "to appreciate the consistent prognosis of [Plaintiff's] physicians" and failed to "build an accurate bridge from the evidence to his conclusion."). Although the ALJ does not say that Dr. Aggarwal was Plaintiff's treating physician, he discussed Dr. Aggarwal's 2011 medical source statement in detail and determined it was inconsistent with "most" examination findings in the record, Dr. Aggarwal's own findings, and Plaintiff's activities of daily living. (R. at 31.) The ALJ then noted Dr. Aggarwal's longitudinal relationship with Plaintiff by noting that "Dr. Aggarwal prepared multiple medical source statements from August 21, 2015 to October 23, 2015." (R. at 32.) But, the ALJ ultimately accorded these source statements less weight because they do not contain a function by function assessment of Plaintiff's ability to perform work-related tasks and only provided insight into a brief period of time. (*Id.*)

The ALJ therefore applied the controlling weight test because he considered the consistency of the treating physician's opinions with the substantial evidence in the record, considered his longitudinal relationship with Plaintiff, and, as discussed more below, fully explained his good reasons for according Dr. Aggarwal less than controlling weight.

Plaintiff next claims that the ALJ was incorrect in his assessment that Dr. Aggarwal's August 2011 opinions were inconsistent with the substantial evidence in the record. First, the ALJ reasonably noted that Dr. Aggarwal's check-box diagnoses, for which he provided no clinical support, conflicted with one another. (R. at 31.) As the ALJ discussed, Dr. Aggarwal determined that Plaintiff could sit, stand, or walk for less than two hours, but did not require an ambulatory aid. (R. at 1731-1732.) He found that Plaintiff was incapable of performing even a low-stress job, but also found that Plaintiff could lift frequently and occasionally lift 5-10 pounds, frequently turn her head side to side and up and down, occasionally stoop or bend, and never squat or kneel. (R. at 1732.)

8

Second, the ALJ reasonably concluded that Dr. Aggarwal's report conflicted with the other medical evidence in the longitudinal record. Specifically, the ALJ observed that Dr. Aggarwal's reported 2011 limitations conflicted with his monthly 2015 and 2016 reports where he indicated that Plaintiff had normal gait/balance, normal sensation, and full motor strength. (R. at 1022, 1024, 1030, 1033, 1036, 1039, 1042, 1045, 1675.) Further, Plaintiff's 2016 records from Town Center Orthopedic indicated that Plaintiff had normal gait, balance, and stability throughout the year. (R. at 1099, 1103, 1108, 1121, 1128, 1133, 1147, 1172, 1289.) And, in 2015 and 2016, state agency psychologist Dr. Bryce Phillips, Psy.D and Dr. David Deaver, Ph.D. opined that Plaintiff "would be capable of simple and unskilled work with limited social contact." (R. at 113-116, 142.) Similarly, consultative examiner Dr. Charla White stated in 2015 that Plaintiff's prognosis was "[f]air to good. Ms. Wallace has maintained employed successfully most of her adult life." (R. at 1019.) In 2016, consultative examiner Dr. Emmanuel Ekanem also concluded that Plaintiff could perform simple, sedentary work. (R. at 1343.)

Finally, the ALJ properly concluded that Dr. Aggarwal's 2011 report was inconsistent with Plaintiff's daily living activities, as Plaintiff indicated she was able to take care of herself, perform light chores, care for her teenage daughter, manage her own benefits, and shop in stores when necessary. (R. at 63-68.)

The weight of the medical evidence contained in the record, in addition to Plaintiff's activities of daily living during the relevant period, is therefore inconsistent with Dr. Aggarwal's conclusions that Plaintiff's conditions rendered her unable to work. Accordingly, the ALJ properly applied the controlling weight test.

9

C. **The ALJ's Reasons**

Second, Plaintiff's contends that the ALJ failed to give "good reasons" as to why he gave Dr. Aggarwal's opinions less than controlling weight. When a treating source is not entitled to controlling weight, the ALJ must apply a number of factors and "give good reasons…for the weight" the ALJ gives to the treating physician. 20 C.F.R. § 404.1257(c)(2). Some factors the ALJ may use in determining whether to give a treating physician controlling weight include the length of the treatment relationship, supportability, consistency, and "any factors…which tend to support or contradict the medical opinion." 20 C.F.R. § 404.1257(c)(1)-(6). An ALJ need not expressly mention the statutory factors in order to provide good reasons for according less than controlling weight to a treating physician. *See Burch v. Apfel*, 9 F. App'x 255, 259 (4th Cir. 2001) (finding that the ALJ provided good reasons for according less than controlling weight to Plaintiff's treating physician where he discussed the treating relationship, doctor's progress notes, specialization, and inconsistencies with the record).

Here, the ALJ clearly outlined why he gave Dr. Aggarwal's opinions little weight. Specifically, the ALJ gave three reasons: (1) Dr. Aggarwal's 2011 medical source opinions were inconsistent with the substantial evidence in the record; (2) Dr. Aggarwal's 2015 opinions consisted of check boxes and did not contain a function by function assessment of Plaintiff's work abilities; and (3) Dr. Aggarwal's 2015 medical source opinions made conclusions reserved to the Commissioner. The undersigned will examine each reason in turn.

*First*, the ALJ reasonably concluded that Dr. Aggarwal's 2011 opinions were inconsistent with the substantial evidence in the record. Specifically, the ALJ found that the opinions were contrary to the other medical opinions in the record, Dr. Aggarwal's own report, and Plaintiff's daily living activities. As explained above, Dr. Aggarwal's conclusions were contradictory to his

own reports, his longitudinal records, the opinions of the majority of other medical providers, and Plaintiff's activities of daily living. *See supra* Part B.

*Second*, the ALJ reasonably concluded that Dr. Aggarwal's 2015 check-box opinions provided only little insight over a brief time period. In his 2015 medical source statements, Dr. Aggarwal vaguely checked off that Plaintiff could not sit for more than two hours and was "incapable of even low-stress jobs" on account of her impairments. (R. at 1731-34.) However, these conclusions only reflect Dr. Aggarwal's observations during these particular 2015 appointments, and do not provide information as to Plaintiff's future abilities to work, her abilities to adjust to certain kinds of work, treatment, or even any details at all supporting his opinions.

*Third*, the ALJ properly accorded little weight to Dr. Aggarwal's contention that Plaintiff was disabled because it is a legal conclusion reserved to the Commissioner. "A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that [the ALJ] will determine that you are disabled," as such opinions are not medical opinions and are reserved for the Commissioner. 29 C.F.R. § 404.1527(d). An ALJ need "not give any special significance to the source of an opinion on issues reserved to the Commissioner." 29 C.F.R. § 404.1527(d). Accordingly, the ALJ acted reasonably in giving Dr. Aggarwal's 2015 opinion little weight on this basis.

In sum, the undersigned finds that the substantial evidence supports the decision to give Dr. Aggarwal's opinions little weight, and that the ALJ gave good reasons for doing so.

11

## V. R<small>ECOMMENDATION</small>

For the reasons set forth above, the undersigned U.S. Magistrate Judge recommends that the Court enter an order (1) granting Defendant's Cross Motion for Summary Judgment (Dkt. 16); (2) denying Plaintiff's Motion for Summary Judgment (Dkt. 13); and (3) affirming the final decision of Defendant.

## VI. N<span>OTICE</span>

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

The Clerk is directed to send a copy of this Report and Recommendation to counsel of record.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

October 19, 2020
Alexandria, Virginia